```
                  IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF KANSAS


PHILLIP LAHMAN,

                        Plaintiff,

vs.                                         Case No. 13-1301-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                        Defendant.
```

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On November 10, 2011, administrative law judge (ALJ) James Harty issued his decision (R. at 11-25). Plaintiff alleges that he had been disabled since May 15, 2008 (R. at 11). Plaintiff is insured for disability insurance benefits through March 31, 2014 (R. at 13). At step one, the ALJ found that plaintiff did

not engage in substantial gainful activity since the alleged onset date (R. at 13).  At step two, the ALJ found that plaintiff had the following severe impairments:  right carpal tunnel syndrome; degenerative disc disease of the cervical, lumbar and thoracic spine; stress urinary incontinence; major depressive disorder, severe, without psychotic features also diagnosed as major depressive disorder, moderate, and major depressive disorder, in remission; and generalized anxiety disorder also diagnosed as generalized anxiety disorder, in remission (R. at 13).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 14).  After determining plaintiff's RFC (R. at 16), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 23).  At step five, the ALJ found that plaintiff can perform jobs that exist in significant numbers in the national economy (R. at 23-24).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 24).

**III.  Are the ALJ's RFC findings supported by substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case

record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess

whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ found that plaintiff can perform medium work, including lifting/carrying up to 50 pounds occasionally and 25 pounds frequently. Plaintiff can stand/walk for 6 hours and sit for 6 hours out of 8 hour workday. Plaintiff can occasionally kneel, crouch, crawl, and climb ladders, ropes or scaffolds. He can perform no more than frequent handling and fingering with the right, dominant upper extremity. Plaintiff must avoid concentrated exposure to hot or cold temperature extremes and vibration. Plaintiff can perform simple, routine, repetitive tasks not performed in a fast-paced production environment involving no more than occasional interaction with the general public. Plaintiff is limited to occupations that can be performed wearing an incontinence protection pad (R. at 16).[1]

The ALJ's RFC findings mirror the opinions of Dr. Eades, who performed a state agency RFC assessment on July 7, 2010 (R. at 392-399). The ALJ accorded "significant" weight to this opinion (R. at 21). Unlike Fleetwood v. Barnhart, 211 Fed. Appx. 736, 740 (10th Cir. Jan. 4, 2007), this is not a case in which the ALJ only relied on a check-the-box form with little or

---

[1] Plaintiff does not take issue with the mental RFC findings, but only with the physical RFC findings.

no explanation for the conclusions reached.  Dr. Eades included a narrative discussion of the evidence in support of her findings (R. at 399).

Plaintiff alleges error because Dr. Eades, in her narrative discussion, does not expressly mention the severe impairments of degenerative disc disease of the cervical and thoracic spine (Doc. 11 at 11).  Thoracic and cervical issues were mentioned in the medical records on January 12, 2010 (R. at 329, Doc. 11 at 2, 12).  Those records are part of Exhibit 13, which predates the assessment of Dr. Eades.  Exhibit 13 was received by Disability Determination Services on March 5, 2010, and thus was part of the record before Dr. Eades prepared his assessment (R. at 324).  The ALJ indicated that the assessment was requested based on a review of plaintiff's records (R. at 21).  Therefore, the medical records relating to plaintiff's thoracic and cervical issues should have been provided to Dr. Eades.  The court is not aware of any regulation or case law that a medical opinion has to mention each specific severe impairment or each piece of medical evidence before the ALJ can rely on that opinion in making his RFC findings.

Furthermore, plaintiff has failed to point to any evidence in the record indicating that plaintiff's degenerative disc disease of the cervical and thoracic spine resulted in limitations not included in the ALJ's RFC findings.  In the case

of Arles v. Astrue, 438 Fed. Appx. 735, 737, 740 (10th Cir. Sept. 28, 2011), obesity was identified as one of plaintiff's severe impairments. The court noted that the claimant did not discuss or cite to any evidence showing that obesity further limited his ability to perform a restricted range of sedentary work. The court held that the ALJ's decision provided an adequate explanation of the effect of obesity on plaintiff's RFC.

In the case before the court, the ALJ found that plaintiff's severe impairments included degenerative disc disease of the cervical and thoracic spine. The ALJ stated that, in making his RFC findings, he should consider all of plaintiff's impairments (R. at 12). There is no reason not to believe the ALJ's statement that the assessment of Dr. Eades was based on a review of plaintiff's records which were available at the time of the assessment (R. at 21), including the records pertaining to plaintiff's thoracic and cervical issues. Finally, plaintiff failed to cite to any medical or other evidence showing that plaintiff's degenerative disc disease of the cervical and thoracic spine resulted in limitations not contained in the ALJ's RFC findings. On these facts, the court finds no error by the ALJ in his consideration of plaintiff's degenerative disc disease of the cervical or thoracic spine.

The ALJ's RFC findings also state that plaintiff is limited to occupations that can be performed wearing an incontinence

protection pad (R. at 16). Plaintiff alleges that the RFC findings do not account for plaintiff's frequent need to urinate, his incontinence and his diarrhea/fecal incontinence (Doc. 11 at 13-17). The ALJ noted that the treatment notes indicate that he needs to wear two or more protective pads a day to address his incontinence (R. at 17, R. at 430: "He does need to wear at least two pads a day"). Plaintiff testified that he needs to urinate on an hourly basis, and that he uses 2-6 pads a day (R. at 44, 46). The ALJ found that, aside from his need for incontinence pads, the degree of limitation alleged by the plaintiff is not supported by objective evidence, examination findings, or treatment notes (R. at 17).

Dr. Werth indicated on July 20, 2011 that plaintiff suffers from stress incontinence, and has to wear at least two pads a day. He also found that plaintiff has chronic diarrhea, which is getting worse, and is having fecal incontinence. He noted that plaintiff soils himself and this has been a cause of great consternation as well. Dr. Werth indicated he would follow up with Dr. Maurer regarding plaintiff's worsening symptoms of diarrhea and fecal incontinence (R. at 430). Advanced registered nurse practitioner (ARNP) Inman opined on August 3, 2011 that plaintiff had "uncontrolled incontinent diarrhea, limiting his ability to work" (R. at 470).

10

The undisputed medical opinions of plaintiff's treatment providers, Dr. Werth and ARNP Inman, is that, in 2011, plaintiff suffered from stress incontinence and from chronic diarrhea, which is getting worse, and fecal incontinence, in which plaintiff soils himself, which could limit his ability to work.[2] There is no evidence that a person with such limitations could work, as these problems were not presented to the VE. This issue was not addressed by Dr. Eades. The ALJ never mentioned the medical evidence of worsening symptoms of diarrhea and fecal incontinence in 2011 from his treatment providers. In light of the uncontradicted medical evidence of plaintiff's condition in 2011, and the ALJ's failure to address this evidence, the court finds that substantial evidence does not support the ALJ's RFC findings, and the case shall be remanded for further hearing on the issue of plaintiff's urinary frequency, urinary incontinence, diarrhea, and fecal incontinence, and their impact on plaintiff's ability to work.

**IV. Did the ALJ err in his credibility analysis?**

Plaintiff also argues that the ALJ erred in his credibility analysis. The court will not address this issue in detail because it may be affected by the ALJ's resolution of the case on remand after the ALJ further considers the medical opinion

---

[2] Plaintiff's treatment records indicate that he was not having problems with diarrhea in June 2010 (R. at 372). In August 2010, Dr. Schwartz noted that plaintiff had irritable bowel syndrome which plaintiff reported he can control with over the counter medication (R. at 402).

evidence and makes new RFC findings, as set forth above.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 2nd day of September 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge